**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO._____

PLATINUM ESTATES, INC.,
and OPMONIES 2, LLC,

      Plaintiffs,

v.

TD BANK, N.A.,

      Defendant.

_____/

## COMPLAINT

For their Complaint against Defendant TD Bank, N.A., Plaintiffs PLATINUM

ESTATES, INC. and OPMONIES 2, LLC, aver and allege as follows:

### THE PARTIES, JURISDICTION AND VENUE

1.    Plaintiff PLATINUM is a Florida corporation which is authorized to do business

in Florida.  Platinum is an entity that was formed to manage certain investments.

2.    Plaintiff OPMONIES is a Florida limited liability company which is authorized to

do business in Florida.   OPMONIES is an entity that was formed to invest in various

investments.

3.    Defendant TD Bank, N.A. was, at all material times, a bank and financial

institution which was authorized to do business in Florida and transacted its business at various

offices around Florida, including its office in Weston, Florida.  It is a bank holding company

located in Maine and is a wholly-owned subsidiary of TD Bank Financial Group of Toronto,

Canada.  TD Bank acquired and assumed the liabilities of Commerce Bank N.A. in 2009.

4.    This Court has jurisdiction over the subject matter of the causes of action in this Complaint by virtue of:

(A)    Federal question jurisdiction pursuant to 28 U.S.C. 1331, involving an action pursuant to 18 U.S.C. Sections 1962(a) and (c), the Racketeer Influenced and Corrupt Organization Act ("RICO");

(B)    Diversity of citizenship pursuant to 28 U.S.C. Section 1332(a)(1), because the parties are citizens of different States and the amount of damages sought by Plaintiffs is in excess of $75,000 exclusive of interest, fees and costs; and

(C)    Supplemental jurisdiction pursuant to 28 U.S.C. Section 1367(a), involving claims that are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III or the United States Constitution.

5.    This Court has personal jurisdiction over Defendant because, among other things, Defendant is licensed and/or authorized to transact business in Florida, it has transacted business in Florida and it engaged in tortious acts in Florida and Defendant is amenable to service of process therein.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District, material events giving rise to this action occurred in this District and Defendant's primary witnesses are located in this District.

## BACKGROUND

7.    Plaintiffs' claims arise from Defendant's culpable involvement in the criminal fraud scheme engineered by Scott Rothstein.

BROAD and CASSEL
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

8.    Not to the exclusion of other acts, Defendant, through its active participation in the Rothstein fraud, legitimized Scott Rothstein and enabled Scott Rothstein to steal hundreds of millions of dollars from innocent investors, including Plaintiffs.  Defendant knew or was willfully blind to the fact that its prized VIP customer, Rothstein, was engineering a massive Ponzi scheme.

9.    In connection with the scheme, Defendant ignored federal, state and internal banking rules, regulations and practices in order to perpetuate the scheme and continue receiving its share of the ill-gotten proceeds.

## THE SCOTT ROTHSTEIN SCHEME

10.    Among other acts, Scott Rothstein solicited investors to invest in purported confidential structured settlements.  Such settlement agreements were falsely presented as having been reached between putative defendants based upon claims of sexual harassment and/or whistleblower actions

11.    The investors were falsely informed that such settlement agreements were entered into pre-litigation, and, therefore, there was no pending litigation or court oversight.

12.    Rothstein relied on the purported success of his law firm, Rothstein Rosenfeldt and Adler, P.A., the existence of actual RRA civil matters, including RRA's purported representation of clients in cases or situations that resulted in significant confidential settlements that required payments over time, and his exalted standing in the community to lure potential investors in order to convince them to make such investments.

13.    Rothstein created the façade that he was a supremely successful attorney.  In fact, his meteoric rise and supposed good standing among the elite was a sham.

3

14.     On December 1, 2009, the United States filed its Information against Scott Rothstein, alleging, among other things, that Rothstein engaged in racketeering, money laundering and mail and wire fraud.  Information in *United States v. Scott W. Rothstein*, 09-cr-60331-JIC [D.E. 1] ("IN").

15.     The United States alleged that Rothstein's law firm, Rothstein Rosenfeldt and Adler, P.A. was a criminal enterprise.  IN ¶ 2.

16.     According to the United States, Rothstein fraudulently induced investors to "invest funds based upon anticipated pay-outs from purported confidential settlements agreements which had been reached between and among certain individuals and business entities." IN ¶ 7 A.

17.     Rothstein used "the offices of other co-conspirators to convince potential investors of the legitimacy and success of the law firm, which enhanced the credibility of the purported investment opportunity." IN ¶ 12.  Those offices included Defendant TD Bank's branch offices.

18.     To further his criminal scheme, Rothstein regularly told investors that "RRA's trust accounts were maintained with a well-established international banking institution, in accordance with the rules and regulations of the Florida Bar ..." IN ¶ 16.  That institution was Defendant TD Bank.

19.     On January 25, 2010, Rothstein pled guilty to the five count Information, which charged Rothstein in Count I with Racketeering Conspiracy, in violation of 18, United States Code, Section 1962(d); in Count 2 with Conspiracy to Commit Money Laundering, in violation of 18 United States Code, Section 1956(h); in Count 3 with Conspiracy to Commit Mail Fraud and Wire Fraud, in violation of Title 18, United States Code, Section 1349; and in Counts 4 and

BROAD and CASSEL
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

5 with Wire Fraud, in violation of Title 18, United States Code, Section 1343, and Rothstein admitted that the statements in the Information were true and correct.

20.    In the Rothstein criminal case, the United States sought and obtained assets for restitution purposes for monies to be distributed to the "victims" of the scheme.  The United States determined Plaintiffs were victims of Rothstein's scheme.

21.    Plaintiffs' claim in the amount of $593,750.00 was fully allowed by the United States.

### DEFENDANT'S KNOWLEDGE OF AND PARTICIPATION IN FRAUD

22.    TD Bank was the financial nucleus of the Rothstein Ponzi scheme as hundreds of millions of Ponzi scheme dollars flowed through RRA's TD Bank trust and operating accounts.

23.    Rothstein's scheme was entirely dependent on the legitimacy TD Bank bestowed upon him.   Indeed, TD Bank treated Rothstein as a VIP customer and afforded him unprecedented privileges and access.

24.    For example, TD Bank lulled investors, including Plaintiffs, into a false sense of security by providing written assurances that settlement funds existed in separate accounts and could only be disbursed directly to the investor(s).

25.    TD Bank further legitimized Rothstein by permitting him to use conference rooms at its branches to have meetings with the very investors he was defrauding and by TD Bank participating in staged procedures during those meetings such that the investor would be led to believe that their investment would be safe with TD Bank's involvement.

26.    TD Bank also performed and profited from the day-to-day transactions that were necessary both to execute and to conceal the scheme.  TD Bank received and sent wire transfer of large sums of money to and from investors' bank accounts throughout the United States.  TD

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida 33131-1811  305.373.9400

Bank also transferred money among several TD Bank accounts at Rothstein's direction, assisting in the scheme by concealing the fraudulent operations of the enterprise to personally benefit itself and Rothstein, as well as others.

27.     TD Bank misrepresented to investors that the settlement funds for Rothstein's clients were "irrevocably locked" in special accounts.

28.     Senior officers of TD Bank also met with investors to reassure them about the investments.

29.     TD Bank supposedly opened separate accounts for each investor's funds.   TD Bank represented to Plaintiffs that settlement funds existed and could only be disbursed directly to the investor.

30.     Rothstein opened over 20 accounts at TD Bank's Weston and other offices.

31.     Without TD Bank, Rothstein would have been unable to perpetuate his fraud or entice Plaintiffs and other victims.

### PLAINTIFFS' CONVERSATION WITH FRANK SPINOSA OF TD BANK

32.     Plaintiffs and other investors heavily relied on representations by TD Bank. Indeed, TD Bank's involvement created the impenetrable perception of Rothstein's legitimacy.

33.     This is particularly true with regard to Plaintiffs.   Specifically, Plaintiffs' representatives, Bruce and Jim Pagano (the "Paganos"), met with Rothstein and others to discuss their possible investment.   Rothstein told the Paganos that their monies would be secured in a trust account at TD Bank.   He also showed them the balance in a trust account on a computer screen by covering half of it with a sheet of paper to supposedly preserve confidentiality.   The balance was over $50 million, and the screen showed the TD Bank name and address.

34.     Rothstein also told the Paganos that TD Bank is the custodian of the trust accounts because it provided the necessary and appropriate protections for the funds and that the balance on the accounts would fluctuate regularly.

35.     Additionally, and supposedly at the request of Rothstein, himself, on Friday, July 24, 2009, TD Bank's Vice President of Operations, Frank Spinosa, telephoned the Paganos, directly in order to further solicit Plaintiffs' investment in the Rothstein scheme

36.     Spinosa introduced himself as upper-level management at TD Bank.  Spinosa indicated that he was asked by Rothstein to call the Paganos because he understood that they had concerns regarding "how escrow breaks."

37.     Spinosa explained that in order for funds to be transferred (i) two signatures from Rothstein and another RRA officer were required; (ii) each signature was voice verified with the other signatory to prevent fraudulent release of the funds; and (iii) funds were only released to the (fictitious) plaintiff in the applicable settlement.

38.     Spinosa indicated to the Paganos that although they (the Paganos) were not permitted to know who the (fictitious) plaintiff was due to client confidentiality, Spinosa and TD Bank were privy to that information because they had to be in order to verify that the funds were being transferred to the correct plaintiff.  This representation had to be false because Rothstein admitted that the settling persons did not exist.

39.     Spinosa represented to the Paganos that TD Bank is a "solvent," "major, top-tier bank," and that it (TD Bank) "did not just throw money around."

40.     Spinosa stated that TD Bank was doing "a lot of these transactions with Scott's firm because we understand how to move money and how to protect our clients."

41.     This conversation led the Paganos to believe that TD Bank dealt regularly in these types of transactions and provided the necessary and appropriate mechanisms to ensure that monies were secure and transferred appropriately.

## TD BANK KNEW OR SHOULD HAVE KNOWN THAT
## THE INVESTMENTS WERE A SCAM

42.     TD Bank participated, or, alternatively, was grossly negligent by recklessly disregarding the following red flags:

a.  the number of trust accounts opened by Rothstein's firm far exceeded the norm for law firms;

b.  the frequency and amount of funds transferred to and from its trust accounts at TD Bank;

c.  frequent overdrafts;

d.  transfers from trust accounts to Plaintiffs OPMonies and other investors but not to the putative plaintiffs in the fictitious settlement agreements;

e.  transfers from trust accounts to operating accounts;

f.  use of conference room facilities for investor meetings;

g.  deviation from normal banking procedures;

h.  disproportionate size of accounts;

i.  unique designation of accounts as confidential;

j.  interrelationship and cross-promotion;

k.  offers of gifts; and

l.  regular requests that deposits be made immediately available.

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

43.     TD Bank ignored its own policies and procedures and violated federal, state and internal bank rules and regulations and acted in contravention of national bank secrecy/anti-money laundering protections applied to wire, interbank and interstate transfers.

## FACTS RELATING TO PLAINTIFFS' INVESTMENTS

44.     Shortly after speaking with Spinosa, on July 28, 2009, Plaintiff OPMonies transferred $375,000.00 to a trust account at TD Bank.  Thereafter, on September 21, 2009, Plaintiff OPMonies made a second investment by transferring $1,000,000.00 to the same trust account at TD Bank (the transfers by Plaintiff OPMonies are collectively referred to as the "Transactions").

45.     Rothstein's fraud scheme collapsed and was exposed when he fled to Morocco on or about October 27, 2009.

46.     All conditions precedent to this action have occurred, are waived or are excused.

47.     Plaintiffs have retained undersigned counsel and have agreed to pay them a reasonable attorneys' fee for their services.

## FIRST CAUSE OF ACTION
### Negligent Misrepresentation

48.     Plaintiffs incorporate by reference paragraphs 1 through 47 above, as though fully set forth herein.

49.     Defendant misrepresented numerous material facts to Plaintiffs prior to their transactions, including but not limited to:

(a) that funds would not be transferred unless (i) two signatures were obtained and (ii) each signature was voice verified with the other signatory to prevent fraudulent release of the funds, and funds were only released to the (fictitious) plaintiff in the applicable settlement; and

9

(b) that although investors were not permitted to know who the (fictitious) plaintiff was due to client confidentiality, TD Bank was privy to that information because it had to know the identity in order to verify that the funds were being transferred to the correct person.

50.     The foregoing misrepresentations were material.

51.     Defendant also did not disclose to Plaintiffs the various "red flags" set forth in Paragraph 42 above.

52.     Defendant knew or should have known that its representations were false.

53.     Defendant intended Plaintiffs to rely upon its misrepresentations.

54.     Plaintiffs relied on Defendant's misrepresentations [and omissions] and engaged in the Transactions based upon the misrepresentations and Plaintiffs would not have engaged in the Transactions had he known the truth.

55.     Defendant's misrepresentations [and omissions] proximately caused Plaintiffs' damages.

WHEREFORE, based upon the foregoing, Plaintiffs demand entry of final judgment against Defendant for compensatory damages, prejudgment interest, interest, costs and such other and further relief that this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Aiding and Abetting Fraud

56.     Plaintiffs incorporate by reference paragraphs 1 through 47 above, as though fully set forth herein.

57.     Defendant knew or should have known that Rothstein was engaged in fraud.

58.     Defendant knowingly joined, participated in, and/or ratified Rothstein's fraud in the following ways:

BROAD and CASSEL

One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

(a) Defendant permitted hundreds of millions, of Ponzi dollars to flow through RRA's TD Bank escrow, trust, and operating accounts in violation of applicable laws, regulations and internal policies and procedures.

(b) Defendant lulled investors, including Plaintiffs, into false senses of security by providing verbal and/or written assurances that settlement funds existed and could only be disbursed directly to the investor;

(c) Defendant permitted Rothstein to use conference rooms at its branches to have meetings with investors and TD Bank employees assisted RRA in arranging meetings with investors;

(d) Defendant mobilized employees to participate in "presentations" or "shows" for Rothstein investors at TD Bank branches;

(e) Defendant misrepresented to investors that the settlement funds for Rothstein's clients were "irrevocably locked" in special accounts;

(f) Senior officers of TD Bank frequently met with investors to reassure them about the investments;

(g) TD Bank represented to Plaintiffs that settlement funds existed and could only be disbursed directly to the investor.

59.    Defendant substantially and materially assisted Rothstein in committing fraud.

60.    As a proximate cause and result of Defendant's acts, Plaintiffs suffered damages.

WHEREFORE, based upon the foregoing, Plaintiffs demand entry of final judgment against Defendant for compensatory damages, prejudgment interest, interest, costs and such other and further relief that this Court deems just and proper.

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

### THIRD CAUSE OF ACTION
**Equitable Indemnification**

61.     Plaintiffs incorporate by reference paragraphs 1 through 47 above, as though fully set forth herein.

62.     Plaintiffs were sued by the Trustee for RRA in the Chapter 7 bankruptcy in the adversary proceeding known as *Herbert Stettin, as Trustee v. OPMONIES 2, LLC and Platinum Estates, Inc.*, Adversary Case No. 10-03558-BKC-RBR-A for a number of claims (the "Adversary Case").

63.     Plaintiffs were forced to retain and pay undersigned counsel to defend themselves in the adversary proceeding and should be reimbursed by Defendant.

64.     To the extent Plaintiffs, or either of them, are determined for any reason to be liable in the Adversary Case, Plaintiffs are entitled to indemnification from such liability by Defendant.

65.     As more fully detailed herein, Plaintiffs are wholly without fault or negligence.

66.     To the extent Plaintiffs bear any liability, such liability is wholly for the fault of Defendant due to its misconduct [and/or negligence].

67.     Defendant is wholly at fault herein.

WHEREFORE, Plaintiffs respectfully demand judgment for indemnity against Defendant, in the event that Plaintiffs are found to bear any liability to the Trustee in the Adversary Case, and fees and costs and demand such further relief as this Court deems just and proper.

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

## FOURTH CAUSE OF ACTION
### CIVIL RICO 18 USC §§1962(a)(b) and (c)

68.     Plaintiffs incorporate by reference paragraphs 1 through 47 above, as though fully set forth herein.

69.     TD Bank engaged in an enterprise to defraud Plaintiffs and other like investors by lulling into false senses of security and permitting them to believe, among other things, that the structured settlements were real, that settlement funds existed in separate accounts, and that settlement funds could only be disbursed directly to the investor.  The Enterprise's activities affected interstate commerce.

70.     The Defendant is a "person" within the meaning of 18 U.S.C. Section 1961(3).

71.     Commencing in or around 2005 and continuing until approximately November 2009, Defendant violated 18 U.S.C. Section 1962(c).

### The Enterprise

72.     At all relevant times, Rothstein and TD Bank associated in fact with each other and with others known and unknown so as to constitute an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c).  At all times relevant to this Complaint, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

73.     The "association in fact" Enterprise had an ascertainable structure and organization and existed apart from its predicate acts.  Defendant associated with the Enterprise through its personal involvement in the underlying racketeering offenses as well as through the continuous concealment and promotion of the Enterprise's activities.

74.     Defendant associated with Rothstein and others for the common purpose of defrauding Plaintiffs (and other investors) and converting their funds and property for Defendant's personal gain.

13

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

75.     In furtherance of the Enterprise, Rothstein and TD Bank committed numerous overt acts, as set forth in Paragraphs 1 through 47 of this Complaint, including violation of the wire fraud, interstate transportation of stolen property, and money laundering statutes.

### The Purpose and Object of the Racketeering Activity

76.     The principal purpose of the racketeering conspiracy was to generate money for Rothstein, TD Bank, and others through the operation of the Enterprise and various criminal activities, including wire fraud and money laundering.

77.     Rothstein, TD Bank, and others agreed to engage in a pattern of racketeering activity using various locations, including but not limited to several TD Bank branches and offices located in south Florida, to further the objectives of the Enterprise.

### Direction of the Enterprise's Affairs

78.     Rothstein and TD Bank knowingly conducted or participated, directly or indirectly, in the conduct of the affairs of the Enterprise within the meaning of 18 U.S.C. Section 1962(c).  Furthermore, the Defendant was "employed by or associated with" the Enterprise within the meaning of 18 U.S.C. Section 1962(c).

79.     Rothstein directed and managed the Enterprise's activities through a pattern of racketeering activity within the meaning of 18 U.S.C. Sections 1961(1), 1961(5), and 1962(c).

80.     Rothstein and TD Bank conducted and participated in the Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. Sections 1961(1), 1961(5), and 1962(c).

### The Pattern of Racketeering Activity

81.     In the course of conducting and participating in the "structured settlement" Enterprise, Defendant executed numerous predicate acts of racketeering activity, which are

indictable under provisions of the U.S. criminal code enumerated in 18 U.S.C. Section 1961(1)(B), as more specifically alleged below.

82.     As described throughout this Complaint, Defendant engaged in a pattern of related and continuous predicate acts over a substantial, but closed, period of time.  The unitary scheme began sometime in or around 2005 and continued until approximately November 2009.

83.     The predicate acts constituted a variety of unlawful activities, each conducted in furtherance of the Enterprise and the common purpose to defraud Plaintiffs and other investors like them and obtain millions of dollars.  The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts are related and are not isolated events.

84.     The predicate acts all had the purpose of diverting and misappropriating monies that Plaintiffs and others had invested with Rothstein.  The predicate acts were committed or caused to be committed by Rothstein, TD Bank and others, and were interrelated in that they involved using Plaintiffs' funds.    Further, on information and belief, Defendants' misappropriation repeatedly involved diversion of funds for: (a) Defendants' personal benefit and (b) making purported payments to certain investors to conceal their theft of other funds pursuant to the scheme.

85.     More specifically, Rothstein and TD Bank enhanced the credibility of the purported investment opportunity by using Spinosa—the Regional Vice President for TD Bank— and TD Bank, generally, to convince Plaintiffs and others of the legitimacy and safety of the investment.

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

### RICO Injury

86.     By virtue of Rothstein and TD Bank's violation of 18 U.S.C. Section 1962(c), Plaintiffs have sustained substantial injury.

87.     Rothstein and TD Bank's RICO violations were the actual cause of Plaintiffs' damages, which would not have occurred without Rothstein and TD Bank's conduct.   In addition, the acts and violations were the direct, natural, and proximate cause of damage to Plaintiffs, including but not limited to, the loss of Plaintiffs' funds.  Rothstein and TD Bank profited from their RICO acts and used some proceeds to further their RICO enterprise.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for trial by jury and requests that this Court:

A.     Enter judgment in favor of Plaintiffs and against Defendant, TD Bank;

B.     Award Plaintiffs compensatory damages in an amount to be determined at trial;

C.     Award Plaintiffs treble damages for all injuries deemed at trial to have resulted from TD Bank's racketeering activities, pursuant to 18 U.S.C. Section 1964(c);

D.     Award Plaintiffs punitive damages in an amount to be determined at trial appropriate to the severity of TD Bank's conduct;

E.     Award Plaintiffs its costs, interest and reasonable attorneys' fees incurred in prosecuting this action pursuant to 18 U.S.C. Section 1964; and

F.     Such other and further relief as this Court may deem just and proper.

### REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial on all counts so triable against Defendant.

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida 33131-1811  305.373.9400

Respectfully submitted:

Rhett Traband
Florida Bar No. 028894
rtraband@broadandcassel.com
Michelle T. Visiedo
Florida Bar No. 526622
mvisiedo@braodandcassel.com
**BROAD AND CASSEL**
2 S. Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9425
Facsimile: (305) 995-6385
*Counsel for Plaintiffs*

4831-8102-8104.1
44910/0002

BROAD and CASSEL
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400